IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

**PERRY JOE GATLIN**                                                                                  **PLAINTIFF**

V.                                       **CASE NO. 3:19-CV-03052**

**PROSECUTOR DEVON GOODMAN;**
**JAIL ADMINISTRATOR JASON DAY;**
**CORPORAL JARED POINTER; CORPORAL**
**WADE; and JAILER HEATH HUDSON**                                                **DEFENDANTS**

## OPINION AND ORDER

Perry Joe Gatlin ("Gatlin"), a former inmate of the Boone County Detention Center ("BCDC"), has filed a civil rights action under 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*.

Gatlin names as Defendants Prosecuting Attorney Devon Goodman ("Goodman"), Jail Administrator Jason Day ("Day"), Corporal Jared Pointer ("Pointer"), Corporal Wade ("Wade"), and Jailer Heath Hudson ("Hudson"). Gatlin has sued the Defendants in both their individual and official capacities.

Gatlin contends his constitutional right of privacy was violated when Defendants opened an envelope sent to him marked "legal mail," read it, and shared it with others. The envelope contained his minor daughter's medical record. This case is once again before the Court for preservice screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(i-iii). Under § 1915(e)(2)(B), the Court has the obligation to screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915(e)(2)(B).

By Opinion and Order (Doc. 11) entered on September 6, 2019, the Court

1

dismissed Gatlin's claim under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). With respect to his invasion of privacy claim, Gatlin was directed to file an additional supplement to his Complaint containing the following details: the contents of the medical record; the nature of the criminal proceedings in which the medical record was disclosed; the relevance, if any, of the medical record to those criminal proceedings; why, and by whom, the medical record was sent to the jail in the first place; and, how Pointer obtained the medical record. Gatlin was directed to file his supplement no later than September 27, 2019. He filed it late on October 2, 2019 (Doc. 12), but the Court has considered it, nonetheless.

## I. BACKGROUND

According to the allegations of the Complaint and both Supplements (Docs. 2, 3, 12), Gatlin's minor daughter was born on March 18, 2019. At the time, Gatlin was not incarcerated. According to Gatlin, on March 21, 2019, he and his wife became concerned about their daughter's breathing. They called their daughter's doctor, Dr. Elizabeth Morgan, and were instructed to bring the baby in the following day. A summary of the March 22, 2019 office visit indicates the baby was seen for a scheduled weight check. (Doc. 12 at 4). No mention is made of any breathing difficulties. *Id.*

In any event, Gatlin was also scheduled to appear in court on March 22, 2019. As his wife was medically unable to drive, Gatlin was required to drive his wife and the baby to the appointment with Dr. Morgan. Gatlin indicates that he contacted the court and his probation officer to tell them about his baby's medical situation, but a failure-to-appear warrant was issued. Gatlin believes that the process of revoking his parole had begun

before the baby was born. At some point, Gatlin was taken into custody and booked into the BCDC.

Gatlin asked his wife to mail him the single-page summary of the doctor's visit on March 22. Gatlin intended to use the medical record to establish his whereabouts on March 22 as a defense to the failure-to-appear charge. Gatlin alleges that the medical record had no other relevance to his criminal charges. Gatlin maintains that his wife marked the envelope containing the March 22 summary of the visit as "legal mail." According to Gatlin, the "legal mail" designation meant the envelope could only be opened in his presence and inspected for contraband but could not be read.

According to Gatlin, on April 14, 2019, the medical record was taken out of the envelope by Pointer. The jailers then discussed the record and passed it around prior to faxing it to Goodman, the prosecutor in the state criminal action against Gatlin. According to Gatlin, Pointer thought it was "a joke and shared [the record] with not only his shift but the next shift." Gatlin alleges the record was passed though Wade and Hudson as well as other officers.

Once Defendants were done passing the record around, Gatlin alleges that Wade, who discussed the record with the shift commanders, including Day, gave Gatlin the medical record. Gatlin alleges that neither he nor his wife had signed a medical authorization form releasing his minor daughter's medical record.

Gatlin reports that Goodman discussed the record with Derika Bell and Jamie Christman from the public defender's office and also provided them with copies. Gatlin alleges Goodman "was heard in the courtroom discussing and making jokes, comments

about my daughter[']s medical status." Gatlin maintains Goodman tried "to use the document[] to further my incarceration due to a failure to appear in court."

Gatlin alleges that Defendants' conduct constitutes a violation of his family's constitutional right to privacy because they illegally obtained, shared, and used the medical record. Gatlin asserts that the medical record was no business of the Defendants, or the court, except to show his whereabouts on the March 22 court date. For this reason, Gatlin believes that only his daughter's name, date of birth, gender, and date of the visit were relevant to his case, and the nature of her medical issues should not have been discussed.

Gatlin asserts that Pointer admitted to him that the matter was handled improperly and asked if Gatlin forgave him. Additionally, Gatlin alleges that Wade apologized for the manner in which the document was handled.

As relief, Gatlin requests monetary damages. He also asks that Goodman be prevented from engaging in future infringement of the right to privacy in medical records.

## II. LEGAL STANDARD

The Court is obligated to screen the case prior to service of process being issued. The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious; (2) fail to state a claim upon which relief may be granted; or, (3) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i-iii).

A claim is frivolous when it "lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim fails to state a claim upon which relief

4

may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (internal quotation marks and citation omitted).

However, the Court bears in mind that when "evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded, . . . to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

### III. DISCUSSION

Gatlin claims that the handling of his daughter's medical record invaded his constitutional right to privacy. As discussed in the prior Opinion and Order (Doc. 11), the Supreme Court has recognized a limited right of privacy that safeguard[s] individuals from unwarranted governmental intrusions into their personal lives." *Whalen v. Roe*, 429 U.S. 589, 598 n. 23 (1977). In *Cooksey v. Boyer*, 289 F.3d 513 (8th Cir. 2002), the Court of Appeals for the Eighth Circuit described this limited right in the following terms:

> [W]e have consistently held that to violate the constitutional right of privacy the information disclosed must be either a shocking degradation or an egregious humiliation . . . to further some specific state interest, or a flagrant breach of a pledge of confidentiality which was instrumental in obtaining the personal information. A determination of whether a particular disclosure meets this exacting standard may include consideration of whether the

5

person had a legitimate expectation that the information would remain confidential while in the state's possession.

*Id.* at 516 (internal quotation marks and citations omitted).

More recently in *Dillard, et al v. City of Springdale, et al.*, 930 F.3d 935 (8th Cir. 2019), the Eighth Circuit emphasized that it had "adopted the understanding of the Fourteenth Amendment, recognizing a right to confidentiality protection against public dissemination of information concerning highly personal matters representing the most intimate aspects of human affairs." *Id.* at 941 (internal quotations marks and citations omitted). Further, it stated it had "recognized information privacy's limits by denying its application in less-than-egregious cases." *Id.* at 942.

Here, the medical record disseminated was a one-page summary of a doctor's visit for Gatlin's infant daughter on March 22, 2019. The record itself was relevant to Gatlin's failure-to-appear charge only to the extent it evidenced his presence at the doctor's office at some point during the day on March 22. The record itself is mainly innocuous with respect to Gatlin's infant daughter, reciting only her vitals and stating there were no feeding problems, the amount of weight loss was appropriate, she was producing plenty of wet and stool diapers, and there was no significant jaundice. It was noted that routine precautions were discussed, including infection precautions. Perhaps the most "private entry" is made under the topic: "Other Medical Conditions (Problem List)." The entry states: "Other psychoactive substance abuse, uncomplicated."

As Gatlin intended to use the medical record as a defense to the failure-to-appear charge, no plausible claim is stated. The document would have become public record in his criminal case. While the Court certainly does not condone the conduct of Day,

Pointer, Wade and Hudson, in opening, reading, talking about, and disseminating the document, no plausible invasion of privacy claim exists under the circumstances alleged in this case. This is certainly not the type of shocking degradation, egregious humiliation, or flagrant breach of confidentiality that the limited constitutional right of privacy is concerned with protecting against.

To the extent the Complaint and supplements thereto assert a First Amendment claim based on the letter from his wife being opened outside his presence, no plausible claim is asserted. Inmates have a First Amendment right of free speech to send and receive mail. *Hudson v. Palmer,* 468 U.S. 517, 547 (1984). "Prisoners' First Amendment rights encompass the right to be free from certain interference with mail correspondence." *Davis v. Norris,* 249 F.3d 800, 801 (8th Cir. 2001).

The terms "privileged mail" and "legal mail" apply to mail to or from attorneys. *See, e.g., Wolff v. McDonnell,* 418 U.S. 539, 576 (1974). Incoming legal mail must be opened in the inmate's presence and may not be read. *Id.* This rule serves to allow confidential communications between inmates and their attorneys and protects an inmate's right of access to the courts while at the same time accommodating the institution's need to search for contraband. *Id.* The terms "legal mail" or "privileged mail" are used interchangeably and in some detention facilities are defined to include correspondence to or from judges, courts, or government officials. *See, e.g., Weiler v. Purkett,* 137 F.3d 1047, 1051 (8th Cir. 1998). The mail sent to Gatlin by his wife does not constitute "legal mail." *Id.*

The letter therefore can only be treated as personal mail. Courts afford less protection to personal mail and greater protection to outgoing mail than to incoming mail. *See Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989). Personal mail may be subject to inspection to a greater degree than legal mail. *Thongvanh v. Thalacker*, 17 F.3d 256, 258-59 (8th Cir. 1994); *see also United States v. Baumgarten*, 517 F.2d 1020, 1028 (8th Cir. 1975) (upholding screening procedure that called for the jailor to read inmate letters). Here, Gatlin alleges only that Defendants interfered with a single piece of personal mail. He does not allege the existence of an ongoing, widespread practice or the existence of a policy of interference with personal mail. This is simply insufficient to assert a plausible claim. *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (finding that an isolated incident of mail tampering is usually insufficient to establish a constitutional violation and that a showing of regular and unjustifiable interference is required).

## IV. CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that this case is **DISMISSED WITHOUT PREJUDICE** due to frivolousness and failure to state claims upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B).

The dismissal of this case constitutes a strike pursuant to 28 U.S.C. § 1915(g). The **Clerk** is directed to place a strike flag on this case.

**IT IS SO ORDERED** on this 12th day of November, 2019.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE